IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JACQUES ROY, ET AL. | CRIMINAL NO. 3:12-CR-54-L<br><br>**UNDER SEAL** |

GOVERNMENT'S NOTICE OF INTENT TO OFFER EVIDENCE
POTENTIALLY RELEVANT TO FEDERAL RULE OF EVIDENCE 404(b)

The government notifies the defendants that the government intends to offer evidence at trial of the following issue. Although the government believes these acts are intrinsic to the indictment, it flags these issues here should the defense wish to argue that they constitute other crimes, wrongs or acts that would be subject to Federal Rule of Evidence 404(b). This issue has been filed under seal in an abundance of caution. The government hereby incorporates the Factual Background that is provided in the Notice that was not filed under seal.

*Issue No. 8: B.S.'s Testimony* – The government intends to call an individual, identified only as B.S. for purposes of this Notice, as a witness in its case-chief to discuss her relationship with Dr. Roy and statements made by Dr. Roy to her.[1] The government anticipates that B.S. will testify that in 2010/2011, after having surgery, she was approached by a home health company (not one of those specifically identified in the Superseding Indictment) and it was suggested to her that she qualified for Medicare home healthcare services. B.S. was not homebound at the time.

---

[1] Government counsel will fully identify this individual for defense counsel, to the extent they are unaware of her identity.

Eventually, B.S. was visited by Dr. Roy and one of Dr. Roy's nurses. During one of Dr. Roy's visits, their relationship became sexual and they engaged in a sexual relationship over the course of several visits by Dr. Roy to B.S.'s home. During these encounters, B.S. asked Dr. Roy to write certain drug prescriptions for her. At first, Dr. Roy refused but he quickly relented and wrote a prescription for Xanax and Clonazepam for B.S. but under Dr. Lamarre's (his wife's) name. Dr. Roy and B.S. discussed these prescriptions on other occasions and Dr. Roy expressed concern as to the volume of narcotics that B.S. was using but continued to write and approve the prescriptions.

The government anticipates that B.S. will recount several conversations she had with Dr. Roy, in which Dr. Roy discussed the pending investigation, including: (1) the fact that he was a "step ahead" of investigators, (2) instructions to B.S. to not reveal the sexual nature of their relationship because he could get in trouble, (3) that Dr. Roy wanted to flee because of the investigation, (4) and he did not care about his medical license, (5) that his attorney would get him off, (6) concerns that the FBI was listening to his phone calls, and (7) that he was being followed by the FBI. These comments were often made when B.S. and Dr. Roy were alone, following a sexual encounter.

The statements made by Dr. Roy to B.S. are intrinsic to the charged offenses as Dr. Roy is reflecting his concerns about the investigation, his intent to evade prosecution, and his consciousness of guilt. As noted for Issue No. 7 (filed in the public document), such evidence is routinely admitted as intrinsic evidence, or if not, then as Rule 404(b) evidence.

The interaction between Dr. Roy and B.S. is also instructive as to the overall alleged scheme. B.S. was not homebound and would not have qualified for Medicare home healthcare and yet Dr. Roy continued to see her and treat her as though she was. This is part and parcel of the overall fraud.

The sexual relationship between B.S. and Roy should also be admitted for a number of reasons. First, the statements made by Dr. Roy to B.S. will have no context if provided in a vacuum and without an accurate description of their relationship. It would make little sense to a juror for Dr. Roy to have made such comments to a random patient – just one of several thousand – and thus would improperly cut against B.S.'s credibility. The fact that these comments were effectively pillow talk (or at least made to a romantic partner) increases the likelihood that the jurors will find such comments believable and credible and is thus critical evidence.

In addition, the fact that Dr. Roy prescribed narcotics to B.S. at the same time he was engaged in a sexual relationship with B.S. should be admissible as Rule 404(b) evidence. Dr. Roy is accused of engaging in fraud by certifying patients for medical services that they did not need and for which they were not qualified. B.S. was prescribed narcotics by Dr. Roy that she did not need and even Dr. Roy expressed concern about providing.

In *United States v. Potter*, 616 F.2d 384, 387 (9th Cir. 1979), the appellant argued that evidence of a doctor prescribing medication at the same time he had sex with patients should have been excluded as irrelevant or overly prejudicial. The Ninth Circuit disagreed finding that the evidence "was not offered to impugn character, as appellant

argues, but rather to prove motive and lack of good faith intent in failing to comply with usual "professional practices" and 'legitimate medical purposes.'" *Id*. The Court found that the "motive for his prescribing the controlled substances was unclear. From the evidence that the doctor engaged in sexual activities with his patients simultaneously with the writing of prescriptions the jury could properly infer that the granting of sexual favors provided at least some incentive for his actions." *Id*.

The Court noted that "Rule 404(b) is one of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove only criminal disposition." *Id*. (internal citations omitted). *See also United States v. Hoffman*, 2006 U.S. Dist. LEXIS 89926 (D. Me. Dec. 12, 2006) ("[a]ssuming a proper predicate is established, evidence of a past romantic relationship between Dr. Hoffman and Ms. Close is relevant to show that such a relationship existed and Dr. Hoffman's potential motive in issuing the prescriptions" and "[w]hile evidence of a past romantic relationship may be prejudicial, the Court finds that it is not unduly so under Rule 403")

For the same reasons, the government intends to elicit the above-described information from B.S.

## CONCLUSION

The government respectfully requests a ruling from the Court before trial regarding the admissibility of the above-described category of evidence.[2]

---

[2] Notably, the government has not listed as potential evidence it seeks to introduce the facts surrounding the death of one of Dr. Roy's patients due to prescriptions that Dr. Roy provided the patient, and Dr. Roy's suspension by the Texas Medical Board in 2001.

Respectfully submitted,

JOHN R. PARKER
ACTING UNITED STATES ATTORNEY

*/s/  P.J. Meitl*
P.J. MEITL
Assistant United States Attorney
D.C. Bar No. 502391
Virginia Bar No. 73215
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8680
Facsimile: 214.659.8809
Email: philip.meitl@usdoj.gov

*/s/ Nicole Dana*
NICOLE DANA
Special Assistant United States Attorney
Texas State Bar No. 24062268
1100 Commerce Street, Third Floor
Dallas, Texas  75242-1699
Telephone: 214.659.8694
Facsimile: 214.659.8805
Email: nicole.dana@usdoj.gov

*/s/ Chad E. Meacham*
CHAD E. MEACHAM
Criminal Chief
Texas State Bar No. 00784584
1100 Commerce Street, Third Floor
Dallas, Texas  75242-1699
Telephone: 214.659.8716
Facsimile: 214.767.4100
Email:  chad.meacham@usdoj.gov

---

The government anticipates these facts will only be discussed in the trial should Dr. Roy elect to testify.

## CERTIFICATE OF SERVICE

On November 6, 2015, I electronically submitted the following document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Criminal Procedure 49(b).

s/ *P.J. Meitl*
P.J. Meitl
Assistant United States Attorney