IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO. 3:12-CR-54-L |
| JACQUES ROY, M.D. ET AL | |

GOVERNMENT'S SUPPLEMENTAL NOTICE OF
INTENT TO OFFER EVIDENCE POTENTIALLY
RELEVANT TO FEDERAL RULE OF EVIDENCE 404(b)

The government notifies the defendants that the government intends to offer evidence at trial, and in the government's case-in-chief, that defendant Dr. Jacques Roy was suspended from the practice of medicine by the Texas State Board of Medical Examiners ("TMB") on or about May 18, 2001, and then placed on probation by the TMB for a period of five years.[1] His suspension and probation was lifted in August 2005.

This information and evidence is critical contextual information that helps to explain Dr. Roy's motivation and intent in relation to the massive health care fraud scheme that lies at the heart of the instant matter, for which Dr. Roy stands accused. As discussed more fully below, even though it is highly relevant, the government does not intend to elicit or present evidence related to the *reasons* Dr. Roy was suspended and

---

[1] The government previously filed two *Notices of Intent to Offer Evidence Potentially Relevant to Federal Rule of Evidence 404(b)* – one on the public docket and one under seal. (*See* Dkt. Nos. 589 and 590.) The instant filing supplements those filings and hereby incorporates the "Factual Background" and "Relevant Law" sections contained in those filings.

**Government's Supplemental 404(b) Notice – Page 1**

placed on probation, limiting any prejudicial impact that this evidence might have with the jury.

## FACTUAL BACKGROUND

Dr. Roy graduated from Laval University Medical School in or about 1980 in Quebec, Canada. Dr. Roy was licensed to practice medicine in Texas on August 26, 1984, and was not licensed to practice in any other state. In the late 1990s, he served as an emergency room doctor in the Dallas area.

During the course of this employment, and in or about December 1998, Dr. Roy became involved in an extra-marital affair with a woman known here as D.S. During the course of this relationship, Dr. Roy improperly prescribed narcotic medications to D.S. For example, Dr. Roy prescribed 110 tablets of hydrocodone to the 120-pound woman in 30 days. He also prescribed Vicodin, supposedly for her back pain. D.S. dies in a car accident, which was based in part on her use of hydrocodone. Dr. Roy admitted, in proceedings before the TMB, that he gave her prescriptions during their affair, up until her death in February 1999, but kept no medical records and did no exam. He also admitted that pain management was not part of his medical practice.[2]

On May 18, 2001, the TMB suspended Dr. Roy's physician's license, staying all but the first 30 days of the suspension, and then placing Dr. Roy on probation for five years under certain terms and conditions, which included a demand that Dr. Roy seek approval before he obtained future medical employment. The TMB stated that the

---

[2] As noted above, the government does not, in its case-in-chief, intend to elicit or provide evidence related to the causes for Dr. Roy's suspension and probation. It is provided here to aid the Court in analyzing the instant motion. To the extent that Dr. Roy takes the stand, this information will likely emerge during cross-examination.

**Government's Supplemental 404(b) Notice – Page 2**

suspension was the result of Dr. Roy's "unprofessional conduct, nontherapeutic prescribing or treatment, and administering dangerous or controlled drugs in an improper manner."  The TMB further fined Dr. Roy $10,000 and noted that his "unprofessional or dishonorable conduct [was] likely to deceive or defraud the public or injure the public."

Following the initial thirty day suspension, Dr. Roy sought permission to work at various medical practices, each time chafing at the oversight he had to endure per the terms and conditions of his probation.  He sought to modify his conditions of release in August 2002, but was denied.

Moreover, Dr. Roy did not fare well in these positons.  For example, he was terminated after only six months by Dallas County for "poor performance, including, but not limited to, incomplete prescription writing . . . and violating his State Board Order by writing a prescription for a controlled substance in the absence of any [license]."  At another stop, this time an erectile dysfunction chain, Dr. Roy was sued for the medical treatment he provided, which resulted in a significant settlement for the plaintiff.  In addition, and partly as a result of his low standing in the medical community, Dr. Roy left the practice of medicine altogether for a brief period of time and focused on stock trading.

It was in 2004 that the government alleges Dr. Roy began conspiring with co-defendants Cynthia Stiger and Wilbert James Veasey.  Once he was released from his suspension, Dr. Roy steamed ahead with the fraudulent scheme that he and co-defendants Stiger and Veasey had hatched.  As discussed in greater detail below, the suspension and probation of Dr. Roy motivated him to engage in the alleged conspiracy, to grow it as big

**Government's Supplemental 404(b) Notice – Page 3**

as it eventually grew, and to cover-up his crimes when investigators began to scrutinize his business.

## RELEVANT LAW

Federal Rule of Evidence 404(b) provides that evidence "of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," although such evidence may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)-(2). *See also United States v. Smith*, 2015 U.S. App. LEXIS 18552, 21-22 (5th Cir. Oct. 23, 2015).

## ARGUMENT

The government anticipates that evidence at trial will show that Dr. Roy was motivated to engage in the alleged fraud, at least in part, because of the suspension and probation. The suspension and probation humiliated Dr. Roy and damaged Dr. Roy's reputation within the medical community and the Dallas area. Dr. Roy was no longer seen as a respected doctor and had fewer opportunities to practice medicine with other respected members of the medical community following his suspension and tumultuous probation. As a result, he turned to others practitioners in the medical community, such as upstart home health agencies, who had less experience or ties to the existing medical community, and had little hesitation in engaging in an immense deception designed to siphon and bilk millions of taxpayer dollars from Medicare.

Without evidence showing that Dr. Roy had been suspended and had difficulty obtaining steady and respected medical employment, the jury may wonder and question why this fraud began in 2004, when Dr. Roy had been practicing in Texas since 1984. More specifically, jurors may question why a doctor would begin to engage in such a massive and planned fraud after two decades of practice. Without this evidence, the jury may doubt that a doctor would take such a risk with such a promising and respected career already behind him. In short, the suspension and probation explains, in large part, Dr. Roy's behavior following the suspension and probation – that is it explains his motive – a specific and explicit exception to the 404(b) requirements.

This evidence also helps explain why Dr. Roy attempted to cover-up the alleged crime after June 2011. Dr. Roy knew that he could not recover, professionally, from another adverse finding by the TMB and thus he sought to make as much money as he could in as short of time as possible, even if the cover-up was undertaken in a reckless and obvious manner. As the Court will recall from the Factual Background discussed in Dkt. No. 589, following CMS's suspension of payments to Dr. Roy's business (Medistat) in June 2011, Dr. Roy employed another company (Medcare HouseCalls) to bill Medicare on his behalf, and then had the Medicare money sent to him. This cover-up scheme was neither complicated nor brilliant and its ham-handedness evidence the fact that Dr. Roy knew this was the end of his medical practice, in part, because of his prior suspension. Again, it is evidence of Dr. Roy's motive in engaging in the cover-up.

Moreover, this evidence is more probative than prejudicial. As discussed above, this evidence helps explain the reasons why Dr. Roy engaged in the massive fraud

scheme. And, there is little risk of significant prejudice. As noted above, the government does not intend to elicit the reasons why Dr. Roy was suspended in its case-in chief. The jury will have no idea why Dr. Roy was suspended and might surmise that his suspension was the result of a failure to pay requisite fees or other technical infractions, as opposed to the more bombastic and nefarious reasons that actually caused his suspension. To the extent that the Court believes a limiting instruction would further protect against any prejudice, the government would not be opposed.

In *United States v. Bakal*, 20 Fed. Appx. 37 (2d Cir. N.Y. 2001), the Second Circuit affirmed the District Court's allowance of evidence related to the defendant's NASD license having been suspended. At the District Court level, the government had argued that the suspension provided a motive for the defendant to become involved in the scheme because he needed an affiliation with a registered broker in order to do business. *See id*. at \*\*14-15. The defendant objected to this evidence as prejudicial and improper under Fed. R. Evid. 404(b). *See id*. at \*15. The district court agreed with the government and allowed the evidence. The Second Circuit noted that "Rule 404(b) makes clear that motive is a proper purpose to admit a past act" and that because the evidence "on this point was limited to the fact of, not the reasons for, the suspension, the District Court did not abuse its discretion." *Id*.

Similarly the proposed evidence in the instant case is limited and confined but crucial to presenting a full picture of the overall fraud and why Dr. Roy engaged in the fraud.

Respectfully submitted,

JOHN R. PARKER
UNITED STATES ATTORNEY

/s/ P.J. Meitl
P.J. MEITL
Assistant United States Attorney
D.C. Bar No. 502391
Virginia Bar No. 73215
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8680
Facsimile: 214.659.8809
Email: philip.meitl@usdoj.gov

/s/ Nicole Dana
NICOLE DANA
Special Assistant United States Attorney
Texas State Bar No. 24062268
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8694
Facsimile: 214.659.8805
Email: nicole.dana@usdoj.gov

/s/ Chad E. Meacham
CHAD E. MEACHAM
Criminal Chief
Texas State Bar No. 00784584
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8716
Facsimile: 214.767.4100
Email: chad.meacham@usdoj.gov

## CERTIFICATE OF SERVICE

      On February 15, 2016, I electronically submitted the following document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Criminal Procedure 49(b).

                                                  /s/ P.J. Meitl
                                                  P.J. Meitl Assistant United States Attorney